In the Matter of JULIUS A. WEEKES, Appellant, against JOHN F. O'CONNELL et al., Individually and as Members of the State Liquor Authority, Respondents.

Argued March 6, 1952; decided July 15, 1952.

*Monroe I. Katcher, II,* for appellant.   I. The licensee did not suffer or permit any trafficking in narcotics on the licensed premises.   No clerk, agent, employee, patron, or other person has been convicted of trafficking in narcotics on the licensed premises.   (*People* v. *Dunford,* 207 N. Y. 17; *Matter of Konopka* v. *Bruckman,* 290 N. Y. 777.)   II. But even if Hayes' testimony be taken at its face value, the sum total thereof does not equal the alleged offense of " trafficking " in narcotics on the licensed premises.   (*Matter of Toyos* v. *Bruckman,* 266 App. Div. 28.) III. Petitioner did not make a false material statement in answer to question No. 4 of the application, relative to the arrests of clerk, agent, or employee of the licensee, or any other person. (*Matter of Kessler,* 163 N. Y. 205; *Matter of Hawkins,* 165 N. Y. 188; *Matter of Moulton,* 59 App. Div. 25, 168 N. Y. 645; *Matter of Farley* v. *Miller,* 216 N. Y. 449; *Matter of Cullinan,* 75 App. Div. 301; *Matter of 67 Liquor Shop* v. *O'Connell,* 270 App. Div. 773; *Matter of Brewster,* 39 Misc. 689.)   IV. Petitioner did not willfully and deliberately violate section 110 of the Alcoholic Beverage Control Law, relative to reporting any change in facts set forth in the original or renewal application.   (*Matter of Kessler,* 163 N. Y. 205; *Matter of Glenram Wine & Liquor Corp.* v. *O'Connell,* 269 App. Div. 1004; *Matter of 67 Liquor Shop* v. *O'Connell,* 273 App. Div. 68; *Farley* v. *Aprile,* 86 Misc. 75.)   V. Hearing accorded to petitioner was characterized by unconscionable and prejudicial delay, multiple amendments of unsubstantial charges and biased treatment by the hearing com-

missioner. (*Matter of 67 Liquor Shop* v. *O'Connell*, 273 App. Div. 68.) VI. Respondents may not lawfully render a determination revoking petitioner's license, at a time when no part of the stenographic record of hearing held before the hearing commissioner had been duly considered and appraised either by the hearing commissioner or by respondents or any subordinate of respondents. (*Matter of Joyce* v. *Bruckman*, 257 App. Div. 795; *Matter of Astrab* v. *O'Connell*, 274 App. Div. 931; *Matter of Crean* v. *Bruckman*, 178 Misc. 231; *Matter of Collins* v. *Behan*, 285 N. Y. 187; *Matter of Scudder* v. *O'Connell*, 272 App. Div. 251; *Matter of Tobkes* v. *O'Connell*, 272 App. Div. 240; *Matter of New York Water Service Corp.* v. *Water Power & Control Comm.*, 283 N. Y. 23; *Matter of Greenebaum* v. *Bingham*, 201 N. Y. 343; *Matter of Revere Associates* v. *Finkelstein*, 274 App. Div. 440.)

*Alvin McKinley Sylvester* and *William Hoppen* for respondents. I. The evidence clearly established that petitioner permitted trafficking in narcotics on the licensed premises, made false material statements as to arrests, and failed to notify the Authority of changes in fact attendant upon the arrests. (*Matter of Yacht Club Catering* v. *Bruckman*, 276 N. Y. 44; *Matter of Yates* v. *Mulrooney*, 245 App. Div. 146; *Matter of Clement*, 144 App. Div. 156; *Matter of Cullinan*, 88 App. Div. 6; *Matter of Savoy Associates* v. *Valentine*, 266 App. Div. 63; *Matter Lynch's Bldrs. Restaurant* v. *O'Connell*, 303 N. Y. 408; *Matter of Avon Bar & Grill* v. *O'Connell*, 301 N. Y. 150; *Matter of Stork Restaurant* v. *Boland*, 282 N. Y. 256; *Matter of Menick* v. *Bruckman*, 279 N. Y. 795; *Matter of Kormann's Hofbrau* v. *O'Connell*, 275 App. Div. 930, 300 N. Y. 521; *Guastamachio* v. *Brennan*, 128 Conn. 356; *Matter of College Point Wine & Liquors* v. *O'Connell*, 296 N. Y. 752; *Communications Comm.* v. *WOKO*, 329 U. S. 223; *Matter of Haim* v. *O'Connell*, 195 Misc. 612.) II. The procedure followed in this case was in full accord with the provisions of the Alcoholic Beverage Control Law and the rules of the Authority. Appellant received timely notice of the charges and had a fair hearing at which he was represented by counsel who fully cross-examined the State's witnesses and submitted a detailed brief at the conclusion of the trial. The stenographer's minutes were available if any part of the testi-

mony was required for consultation. The Authority acted on the basis of a report by the hearing commissioner which summarized the evidence with reasonable accuracy and without prejudice. The absence of a transcribed record of the testimony at the time of the determination in no way prejudiced the petitioner or reflected on the fairness of the Authority's action. (*Matter of Elite Dairy Products* v. *Ten Eyck*, 271 N. Y. 488; *Matter of New York State Labor Relations Bd.* v. *Greif Realty Corp.*, 272 App. Div. 928; *Berg* v. *Industrial Comm.*, 236 Wis. 172; *Beem* v. *Industrial Comm.*, 244 Wis. 334; *Radaca* v. *United States Smelting R. & M. Co.*, 62 Ariz. 464; *Magnolia Petroleum Co.* v. *Railroad Comm.*, 127 S. W. 2d 230 [Tex.]; *Taylor* v. *Industrial Accident Comm.*, 38 Cal. App. 2d 75; *Pacific Ind. Co.* v. *Industrial Accident Comm.*, 28 Cal. 2d 329.)

FULD, J. The present proceeding was brought, pursuant to article 78 of the Civil Practice Act, to review a determination of the State Liquor Authority revoking petitioner's restaurant liquor license. The Authority's determination was based on findings that the licensee had on three occasions suffered and permitted trafficking in narcotics on the licensed premises; that he had made a false material statement in the application for renewal of his license; and that he had failed to inform the Authority of a change of facts occurring subsequent to issuance of the license. The Appellate Division having unanimously confirmed the determination, we granted leave to appeal so that we might consider the propriety of the procedure followed by the Authority in reaching its decision.

The charges were tried at a hearing held, not by the Authority itself, but, in accordance with its usual practice, by a deputy functioning as a "hearing commissioner." The hearing extended over a period of three days: the taking of testimony lasted two days, and petitioner's counsel was granted a third day in which to submit a summation of the evidence and an additional exhibit. The hearing commissioner was of the opinion that all but one of the charges leveled against petitioner were sustained by the evidence, and he embodied his conclusions in a report wherein he summarized and analyzed the testimony that had been adduced before him. It does not appear when this report was referred to the Authority, but it is undisputed that

within one hour after the conclusion of the hearing — and this happened to be on the last day of the license period — the Authority entered its order of revocation predicated on findings and conclusions identical to those recommended by its subordinate. No record of the proceedings before the deputy commissioner nor any of the testimony heard by him was then available to the Authority. In point of fact, it is acknowledged that the minutes were not transcribed by the stenographer until several days thereafter.

The power " To revoke, cancel or suspend for cause any license or permit issued " under the provisions of the Alcoholic Beverage Control Law is conferred upon the Authority by subdivision 3 of section 17 of the statute, and subdivision 10 empowers that body, among other things, to " hold hearings, subpoena witnesses, compel their attendance, administer oaths, [and] to examine any person under oath ". The latter subdivision goes on to state that " The powers provided *in this subdivision* may be delegated by the authority to any member or employee thereof." (Emphasis supplied.)

Section 119 of the Law, entitled *" Procedure for revocation or cancellation "*, recites that a retail license may be revoked, cancelled or suspended by the Authority " after a hearing at which the licensee * * * shall be given an opportunity to be heard." Beyond imposing that fundamental requirement, the legislature has not specified the procedure to be followed, providing simply that such hearing " shall be held in such manner and upon such notice as may be prescribed by the rules of the liquor authority " (Alcoholic Beverage Control Law, § 119, subd. 2). The applicable rule (Rules of State Liquor Authority, Rule 2), promulgated pursuant to that statute, provides that revocation hearings are to be conducted by a " hearing commissioner " — who may be a member of the Authority or an employee designated by the Authority. The hearing commissioner " shall rule upon matters of procedure and introduction of evidence and shall conduct the hearing in such manner as, in his discretion, will best serve the purpose of the attainment of justice and dispatch " (subd. 9). " All evidence appearing in the stenographic record ", unless objection has been noted therein, " shall be deemed to have been validly introduced for the consideration of the Authority "

(subd. 8). Oral argument, which may be made only before the hearing commissioner, is similarly " to be included in the stenographic record of the hearing " (subd. 5). " At the conclusion of the hearing, the hearing commissioner shall make his findings as to whether the evidence sustained the charges, or any of them, preferred against the licensee, shall designate which charges he has found sustained by the evidence and shall, at his option, recommend to the Authority the action to be taken against the licensee " (subd. 9).

Then, Rule 2 continues, " The stenographic record of the hearing shall be referred, together with the hearing commissioner's findings and recommendation, if any, for the due consideration and appraisal by the Authority at a meeting duly held by it " (subd. 9).

As is apparent from this review of the pertinent provisions of statute and rule, the determination whether a liquor license is to be revoked, cancelled or suspended must be made by the Authority itself, and that function may not be delegated to any other body or individual. (Cf. *Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488, 497.) Practical necessities, however, demand that the Authority be permitted to assign performance of much of the preliminary work to trained subordinates. Accordingly, the statute explicitly authorizes the Authority to depute an employee as hearing commissioner to conduct hearings upon charges filed against a licensee, and a rule of the Authority directs that employee to make findings and, when so minded, to recommend the action to be taken.

In a case such as the one before us, we do not inquire into the degree of reliance placed by the members of the Authority upon such internal assistance; the extent to which independent study of the evidence in the record is necessary to the required exercise of informed judgment must be left to the wisdom and practical good sense of the commissioners themselves. (Cf. *Matter of Elite Dairy Products* v. *Ten Eyck, supra,* 271 N. Y. 488, 498; *United States* v. *Morgan,* 313 U. S. 409, 422; *Wellapoint Oysters* v *Ewing,* 174 F. 2d 676, 695–696, certiorari denied 338 U. S. 860.) Be that as it may, however, the agency cannot dispense with basic procedural requirements promulgated for the protection of licensees against arbitrary or ill-considered action. In the proceeding under review, there has been an unmistakable

violation of such a requirement. It is undisputed that, in its haste to render a determination, the Authority failed to await even transcription of the minutes of the hearing before rendering a decision and revoking petitioner's liquor license. Instead of having available the stenographic record of the hearing, as demanded by its own rules, the Authority had for its "consideration and appraisal" only the hearing commissioner's digest of the evidence, prepared on the basis of his personal recollection, together with his findings and the summation and motions made by petitioner's attorney.

Though the hearing officer may be authorized to summarize and sift the evidence for the convenience of the Authority, such a summary cannot take the place of the complete transcript required by the Authority's rules. A report of the character here submitted— reflecting as it did the deputy's recollection of testimony given over a period of two days, covering more than 200 printed pages and not yet embodied in a transcribed record — is inherently inadequate; "no such summary statement can reflect with complete accuracy the substance of the oral testimony." (See 1 Benjamin, Administrative Adjudication in the State of New York [1942], p. 139, fn. 26.) And, indeed, the hearing commissioner's resumé in this case, though apparently conscientiously done, contains some errors and omissions.

Their findings being subject only to limited judicial review, administrative agencies should ever be mindful of the heavy responsibility thereby imposed, and that responsibility should dictate conscientious and painstaking assessment of the evidence presented. Accordingly, there may well be reasons for requiring such quasi-judicial bodies generally, when the hearing has been conducted by a subordinate, to have a copy of the record of that hearing in transcribed and readable form before they render their determinations. (Cf. 1 Benjamin, op. cit., p. 138.) The mere availability of such a record tends to guarantee independent and informed appraisal of the proofs and of the contentions of the parties; the summary of the hearing officer, the litigants' briefs, if any, and other secondary, fallible guides may be checked against the primary, unchangeable reference. With regard to particular administrative agencies, the legislature has imposed the requirement — that there be a record before the deciding body — in statutes governing their pro-

cedures (see, e.g., Education Law, § 6515, subd. 4; § 6613, subd. 3; § 7210, subd. 2; § 7308, subd. 2; former § 7408, subd. 1, now § 7406, subd. 1, as amd. by L. 1952, ch. 706; Labor Law, § 706, subd. 3), and Congress has, by provisions of the Federal Administrative Procedure Act (U. S. Code, tit. 5, §§ 1006, subd. [d], 1007, subd. [a]), adopted the same practice as the norm for federal administrative tribunals. And, in the judicial sphere, where decision is made by a court following a reference to hear and report, a full record of the proceedings conducted by the referee is similarly required to be before the court. (See Civ. Prac. Act, § 1174; Rules Civ. Prac., rule 170.)

However, we need not here consider whether, statute and rule aside, the duty to have available a readable transcribed record is imposed generally — as a necessary element of the right of hearing guaranteed by statute — upon every administrative agency that renders a determination on the basis of evidence received at a hearing not attended by its members. (Cf. *Morgan* v. *United States,* 298 U. S. 468, 480–481; *Matter of Joyce* v. *Bruckman,* 257 App. Div. 795, 797, appeal dismissed 284 N. Y. 736.)[1] As already noted, the Authority itself, by explicit rule, promulgated pursuant to statute, has prescribed that " the stenographic record of the hearing shall be referred, together with the hearing commissioner's findings and recommendations, if any, for *the due consideration and appraisal by the Authority at a meeting duly held by it* " (Rule 2, subd. 9; emphasis supplied). That rule, as effective and binding as if in a statute, may not be ignored or disregarded. (Cf. *United States ex rel. Ohm* v. *Perkins,* 79 F. 2d 533.) Nor can there be any doubt that the rule requires the Authority to have before it, not merely the stenographer's shorthand notes, as the Authority now suggests, but the transcribed minutes of the hearing. Any other construction renders meaningless the requirement for referral of the record, for the commissioners cannot " consider " and " appraise " a record which is not in readable and understandable form. Indeed, the Authority

1. In the view that we have taken, it is likewise unnecessary for us to decide whether, where an administrative agency chooses to act before receiving a transcript of the evidence, the petitioner should be afforded an opportunity, prior to determination by the agency, of checking the accuracy and completeness of the resumé submitted by the hearing officer.

acknowledges that the procedure followed in this case was " not usual ". " As a matter of policy," its brief recites, " it is the practice of the Authority to have the transcribed record, that is, the typewritten minutes of any hearing, before it at the time of its determination," so that reference may be made to them.

Our conclusion that the Authority failed to comply with an important procedural safeguard, prescribed by its own rules, requires, without more, that the determination under review be annulled and that the proceeding be remitted to the Authority. Upon such remission, the Authority will, however, be free to render a determination, without the necessity of a new hearing, on the evidence adduced at the original hearing held by the deputy commissioner, since the record of that hearing has been transcribed and is now available for the consideration and appraisal of the Authority.

The order of the Appellate Division should be reversed, the determination of the State Liquor Authority annulled, with costs in this court and in the Appellate Division, and the proceeding remitted to the Authority for further action not inconsistent with this opinion.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROES-SEL, JJ., concur.

Order reversed, etc.